**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

04   11222 MLW

MAGISTRATE JUDGE

|  |  |
|---|---|
| THE GILLETTE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) Civil Action No. _____ |
| | ) |
| RECKITT BENCKISER, INC., | ) JURY TRIAL DEMANDED |
| | ) |
| Defendant. | ) |
| | ) |

RECEIPT # 56354
AMOUNT $ 150
SUMMONS ISSUED Yes
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE

**COMPLAINT**

Plaintiff, The Gillette Company ("Gillette"), for its Complaint in the captioned action,

avers as follows:

**STATEMENT OF THE CASE**

1.      Gillette brings this action for preliminary and permanent injunctive relief to halt a

scheme of false, deceptive, and misleading branding, packaging, and advertising perpetuated by

Defendant Reckitt Benckiser, Inc. ("Reckitt"), in violation of Section 43(a) of the Lanham Act,

15 U.S.C. § 1125(a), and Section 2(a) of the Massachusetts Consumer Protection Act, Mass. Gen.

Laws ch. 93A, § 2(a).  This scheme has confused and misled consumers, and unless enjoined will

continue to confuse and mislead consumers, regarding the fundamental nature and manner of use

of Reckitt's "VEET" brand of depilatory products for women.  Gillette also seeks an award of

damages to compensate it for the harm caused by Reckitt's false and misleading advertising.

**JURISDICTION**

2.      This Court has jurisdiction over the subject matter of this action pursuant to 15

U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1367(a).

## VENUE

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Reckitt is doing business in this judicial district and is engaging in statutory violations and activities which are causing substantial and irreparable injury to Gillette within this judicial district.

## PARTIES

4.      Gillette is a corporation organized and existing under the laws of the State of Delaware and having its principal executive offices at Prudential Tower Building, Boston, Massachusetts 02199.

5.      Upon information and belief, Reckitt is the United States subsidiary and/or affiliate of Reckitt & Coleman (Overseas), Ltd., a foreign corporation based in the United Kingdom which manufactures the products at issue in this lawsuit and holds certain trademark rights related to those products.  Upon information and belief, Reckitt markets, distributes, and sells the products at issue in this lawsuit in United States markets, and its principal executive offices are located at 1655 Valley Road, Wayne, New Jersey 07474.  Reckitt does a substantial amount of business in this judicial district and conducts extensive marketing and sales activities in this judicial district.

## GENERAL ALLEGATIONS

### The Products

6.      Gillette is the recognized world leader in the development and marketing of razors and shaving cartridges.  Among Gillette's successful brands is the Venus® shaving system for women, which consists of a patented blade and razor design and related shaving accessories.

7.    Reckitt markets and distributes a line of depilatory products for women under the brand name "VEET." The VEET product line includes VEET "Rasera" and VEET Mousse.

8.    Unlike blade and razor shaving systems, depilatories work by chemically dissolving hair above the surface of the skin. Women use depilatory crème, a foam-like substance, by applying it to their skin, waiting for a period of time, and then removing the product (and excess hair) with a washcloth or sponge.

9.    Depilatories contain caustic substances that can burn the skin if they are not removed within the requisite period of time after application and can damage clothing and household fabrics and furnishings if not handled properly. These hazards typically are explained on the back side of the product container, along with instructions regarding how long the product can safely remain on skin and how and where the product can safely and effectively be used.

10.    The market for women's hair removal products in the United States is highly competitive, with many products vying for consumer loyalty and market share. In this competitive environment, marketing techniques, including branding, packaging, and advertising, play a critical role in influencing the consumer's choice of product.

11.    Demand for women's hair removal products, and the competition among them, reach a peak in the spring and summer months, due to seasonal weather, fashions, and activities.

12.    Although different from blade and razor systems in function and operation, depilatories (such as Reckitt's VEET products) directly compete with blade and razor systems (such as Gillette's Venus system) in the women's hair removal market. Indeed, as discussed below, the advertising at issue in this lawsuit reflects this competition by directly and indirectly comparing and contrasting Reckitt's VEET products, on one hand, and blade and razor systems, on the other.

## The VEET Branding, Packaging and Advertising

13.     For several years, Reckitt's VEET Mousse depilatory product has been marketed and sold in the United States. This spring, in or about April 2004, Reckitt introduced its VEET "Rasera" product into United States markets. The "Rasera" product consists of a container of depilatory crème packaged together with a plastic spatula or scraper shaped like a razor, which Reckitt has branded as the "Bladeless Razor™".

14.     The product packaging for the VEET "Rasera" product identifies the product with the marks "Rasera" and "Bladeless Razor" and the product designation "Bladeless Razor Kit." The package also bears the claim "NEW" in conspicuous lettering. The VEET "Rasera" product packaging also features a stylized clock face on which "3 min." appears, indicating the supposed time it takes to use the product. The packaging consists of a "blister-pack" with a hole at the top for hanging the package from pegged display racks. A facsimile of the VEET "Rasera" product packaging is attached hereto as Exhibit A.

15.     In conjunction with the introduction of its "Rasera" product, Reckitt launched an extensive, nationwide advertising campaign to promote that product. This campaign has been carried out through a variety of media, including without limitation television, print publications, point of sale materials, product packaging, and the Internet.

16.     Reckitt's advertising for the VEET "Rasera" product is exemplified by a thirty-second television commercial (the "'Rasera' Commercial"), which aired beginning on or about April 5, 2004, This commercial has appeared and continues to appear on national network and cable television broadcasts, including in this District. A compact disc containing a copy of the "Rasera" Commercial, along with a storyboard of the commercial, is attached hereto as Exhibit "B."

17.    The "Rasera" Commercial depicts a woman and a man frolicking about a bedroom in casual street clothing. Then, as the woman lies on the bedroom carpet, still fully clothed, the man applies the VEET "Rasera" depilatory crème and proceeds to use the "Bladeless Razor" in a playful manner, removing the crème. After the woman's leg is briefly rinsed in a bathtub that appears to be located within the bedroom, the commercial closes with the couple cavorting once again, still dressed in street clothing.

18.    While this occurs, the voice-over states as follows:

> Discover new sensations. Introducing the revolutionary VEET
> Bladeless Razor kit. The special hair removal cream works with a
> bladeless razor tool to remove hair. There's no cuts or prickly
> stubble, and your skin feels smooth up to twice as long as shaving
> with a blade. If only every feeling lasted as long. The VEET
> Bladeless Razor kit. The feeling that lasts.

19.    At the same time as Reckitt launched its advertising campaign for the "Rasera" product, Reckitt launched a new advertising campaign for its preexisting VEET Mousse depilatory product, again through a variety of media, including without limitation television, print publications, point of sale materials, product packaging, and the Internet.

20.    Reckitt's new advertising for the VEET Mousse product is illustrated by a thirty-second television commercial (the "Mousse Commercial"), which began to appear on national network and cable television broadcasts, including in this District, on or about May 3, 2004. A compact disc containing a copy of the Mousse Commercial, along with a storyboard of the commercial, is attached hereto as Exhibit "C."

21.    The Mousse Commercial depicts a woman who is awakened by the doorbell, finds her apparent boyfriend at her door, imagines him running his hand along her legs, and screams in panic. The woman is then shown hurriedly using the VEET Mousse product to remove hair from her legs, while simultaneously applying makeup, brushing her teeth, fixing her

hair, and putting on shoes. While this occurs, the narrator states, "When you've got no time to lose, use VEET Mousse, not razors. It's easy and your legs will feel sexy and smooth for days longer than shaving. If only every feeling lasted as long. VEET, a feeling that lasts."

<u>Reckitt's Branding, Packaging and Advertising Is Likely To Mislead Consumers</u>

22.     Through its branding, packaging, and advertising of the VEET "Rasera" and Mousse products, Reckitt has engaged in a scheme to confuse and mislead consumers by depicting the VEET products as something other than the traditional depilatory products that they are. This scheme has been accomplished directly, by naming and describing the products in ways that obscure their fundamental nature, and indirectly, by creating the misleading impression that the products do not have the disadvantages and potential health and safety risks commonly associated with depilatory products.

23.     Reckitt's scheme of misleading branding, packaging, and advertising for the VEET product line features four distinct elements.

24.     *First*, Reckitt's use of the marks "Rasera" and "Bladeless Razor" and the designation "Bladeless Razor Kit," together with the inclusion of the plastic razor-shaped scraper tool in the VEET "Rasera" product packaging, misrepresent the nature, character, and qualities of the VEET "Rasera" product because they suggest to consumers that the product is, or is closely akin to, a razor (like Gillette's Venus system) rather than a traditional depilatory agent. Similarly, the hanging blister-pack is clearly intended to permit the product to be displayed, and on information and belief is used by retailers to display the product, with razor packages, rather than on shelves where other depilatory products are displayed.

25.     The misleading branding and packaging of the VEET "Rasera" product is reinforced in the "Rasera" Commercial, which describes the product as a "special hair removal

-6-

cream" with "a bladeless razor tool to remove hair." The commercial also compares using this product with "shaving with a blade," implying that one can use the product to shave *without* a blade, i.e., to remove hair with the "Bladeless Razor."

26.     Upon information and belief, the so-called "Bladeless Razor" plastic scraper provided in the "Rasera" packaging does not perform the function of a razor in any material respect. Indeed, the "Bladeless Razor" does not materially alter the function or efficacy of the depilatory crème and provides no discernable benefit beyond that which would normally be obtained by a consumer using a washcloth or sponge, items which are customarily used to remove depilatory crèmes.

27.     *Second*, and relatedly, Reckitt's claims, on its packaging and in the "Rasera" Commercial, that the VEET "Rasera" product is "new" and "revolutionary" misrepresent the nature, character, and qualities of the VEET "Rasera" product. Combined with the product branding and packaging described above, these claims give consumers the false impression that the "Rasera" product is something materially different from a traditional depilatory product, presumably owing to the inclusion of the "Bladeless Razor" plastic scraper. As averred above, upon information and belief, the so-called "Bladeless Razor" plastic scraper provided in the "Rasera" packaging does not materially alter the function or efficacy of the depilatory crème and thus does not render the product "new" or "revolutionary" in any material sense.

28.     *Third*, the product packaging and advertising for the VEET products make false and misleading claims regarding the amount of time required to use the products. Upon information and belief, the "3 minute" clock symbol on the front of the VEET "Rasera" product packaging misrepresents the amount of time required to use the product. Upon information and belief, few, if any, consumers will find the three-minute timeframe adequate to remove leg hair

effectively. Indeed, the "Directions for Use" instructions printed on the reverse side of the depilatory crème container expressly acknowledges that longer removal times may be required for some users. On that side, *two* clocks are shown, one indicating "3 min" and one indicating "Max. 8 min." The text below the clock instructs the consumer to leave the Gel Cream on the skin for 3 minutes, "timed with a watch," but "if the hair does not come off after 3 minutes," users should leave the product on "for a bit longer WITHOUT EXCEEDING 8 MINUTES." (Capitalization in original.) Thus, the actual amount of time the consumer is instructed to leave the product on ranges from a minimum of three minutes to a maximum of eight minutes, at which point the crème must be removed, regardless of whether all hair has been removed. In other words, even eight minutes may be insufficient to remove all hair.

29.    In addition, the periods for use represented by the clock symbols on the product label (both the 3-minute clock shown on the front of the package and the 3-minute and 8-minute clocks shown on the reverse side) do *not* include the time necessary to apply or to remove the depilatory crème. Once those times are included in the calculation, the total time to use the product becomes even longer, rendering the "3 min." claim on the front of the package even further from the truth.

30.    The Mousse Commercial for the VEET Mousse product likewise misleads consumers regarding the amount of time required for use. The entire thrust of the commercial imagery is to convey how quickly the product can accomplish the intended purpose of hair removal: the premise of the commercial is an "emergency" requiring essentially instantaneous hair removal, which the product is then shown to deliver. The voice-over text—"When you've got no time to lose, use VEET Mousse . . ."—strongly reinforces this imagery. Although the commercial does not make a specific claim about the amount of time needed for the product to

work, the imagery and text inevitably convey the impression that it is a matter of a few moments. Such impression is plainly false. The instructions on the product container state: "Leave the mousse on the skin for 8 minutes, timed with a watch, then gently use the sponge to test a small area. . . . If hair doesn't come away, leave the mousse on a bit longer WITHOUT EXCEEDING 10 MINUTES OF TOTAL APPLICATION TIME." (Capitalization in original.) Thus, the product container itself indicates that Mousse must be left on for *at least eight* and as much as *ten* minutes to be effective. Moreover, these time periods do not include the time required to apply or to remove the Mousse. The commercial thus is misleading in suggesting that the product can be used in a matter of moments. In addition, in light of the actual amount of time required to use the product, as evidenced by the product's instructions, the commercial misleads by *omitting* any indication of that actual amount.

31.    The Mousse Commercial goes even further, making a *direct comparative advertising claim* about the time required to use the VEET Mousse versus the time to use a blade and razor system like Gillette's Venus system. The opening line of the commercial, quoted in part in the preceding paragraph, states, in full: "When you've got no time to lose, use VEET Mousse, *not razors*." This statement either explicitly or implicitly claims that the product can be safely and effectively used in *less* time than would be required to use a razor and that the product is the more appropriate choice for a consumer whose time is very limited. These claims are demonstrably false and misleading: for most consumers, shaving takes only several minutes, including the time to apply and to remove the shaving cream or gel and thus provide a much quicker way to remove leg hair than will the use of the VEET Mousse. For the consumer with limited time, shaving, not VEET Mousse, is the preferable choice.

-9-

32.    *Fourth*, the depictions of the VEET products in the advertising create false and misleading impressions regarding the manner in which the products can safely and effectively be used, the degree of care required for their use, and the location in the home in which the products may be used. The "Rasera" Commercial creates the false impression that the "Rasera" product can be used in a casual or even playful manner, in living areas of the home, while the consumer is dressed in ordinary clothing. In stark contrast, the "Directions for Use" instructions found on the "Rasera" product label warn consumers to use the product in an "empty bath or shower to avoid spillage on carpet, flooring, and clothing." The directions also instruct the consumer to time the duration of use of the product "with a watch." No one is timing anything in the commercial.

33.    Similarly, the Mousse Commercial misrepresents the method of use for the VEET Mousse product by creating the false impression that the product can be used in a casual and hurried manner while the consumer is dressed and while the consumer is performing other activities like brushing her teeth and putting on makeup. This impression again is flatly contradicted by the "Directions for Use" instructions found on the back of the Mousse container, which, like the "Rasera" container, caution the consumer to use the product in an "empty bath or shower in order to avoid spillage on carpet, flooring, and clothing." As with the commercial for "Rasera," the product instructions also direct the user to time the duration of use "with a watch." Once again, the commercial fails to show the user timing the use with a watch.

34.    The above-described four elements of Reckitt's scheme to deceive work together to obscure, and thus mislead consumers about, the fundamental nature of Reckitt's VEET products. Collectively, they lead to the false impression that the VEET products are something other than, and indeed, a significant advance over, traditional depilatory products, offering greater freedom in manner and location of use and shorter effective times. Further, Reckitt

falsely depicts the VEET "Rasera" product as, or as akin to, a razor system such as Gillette's

Venus product, while falsely advertising the VEET Mousse product as one that will remove hair

faster than a razor.

35.    These four deceptive elements of Reckitt's branding, packaging, and advertising

of its VEET product line, individually and together, have caused and will cause consumer

confusion and deception, to the inevitable and substantial detriment of Gillette, whose Venus

product competes directly against the VEET product line.

<u>COUNT ONE</u>

<u>FALSE ADVERTISING OF THE VEET PRODUCT LINE
IN VIOLATION OF THE LANHAM ACT</u>

36.    Gillette repeats the allegations made in Paragraphs 1 through 35 as if fully set

forth herein.

37.    The designations, depictions, and statements made by Reckitt regarding the VEET

product line, both separately and in combination, materially misrepresent the nature, character,

and qualities of the VEET product line.

38.    These false and misleading designations, depictions and statements are material,

speaking to the inherent qualities and characteristics of the products, and are carefully designed,

intended, and likely to influence consumers.

39.    Reckitt's branding, packaging, and advertising of the VEET  product line, as

described above, violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

40.    Through the acts of false advertising described above, Reckitt has deceived and is

deceiving the public and has caused and is causing injury to the public.

41.    Gillette has been, and continues to be, irreparably damaged by Reckitt's false

advertising in an amount to be proven at trial and in a manner and amount that cannot be fully

measured or compensated in economic terms. Reckitt's actions have caused, and will continue to

cause, irreparable harm to the business, market, reputation, and goodwill enjoyed by Gillette.

Such irreparable harm will continue unless Reckitt's actions are enjoined immediately.

42.    If, and to the extent, the harm to Gillette caused by Reckitt's actions is measurable

and compensable, Gillette seeks damages from Reckitt in an amount to be proven at trial.

COUNT TWO

UNFAIR COMPETITION AND DECEPTIVE ACTS AND PRACTICES<br>UNDER THE MASSACHUSETTS CONSUMER PROTECTION ACT

43.    Gillette repeats the allegations made in Paragraphs 1 through 35 as if fully set

forth herein.

44.    Reckitt's false and misleading branding, packaging, and advertising for the VEET

product line, as described above, is being disseminated in the Commonwealth of Massachusetts.

45.    Reckitt is a "person" within the meaning of Sections 1(a) and 11 of the

Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 1(a), 11.

46.    Reckitt's false and misleading branding, packaging, and advertising for the VEET

product line, as described above, constitutes "trade" and "commerce" under Sections 1(b) and 11

of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 1(b), 11.

47.    Reckitt's false and misleading branding, packaging, and advertising for the VEET

product line, as described above, constitutes unfair competition and deceptive acts and practices

in violation of Section 2(a) of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch.

93A, § 2(a), because it is materially deceptive and misleading to potential consumers.

48.    Reckitt's false and misleading branding, packaging, and advertising for the VEET

product line, as described above, is harmful to the public. In order to sell more products and gain

an increased market share, Reckitt is misleading consumers into believing that its VEET

-12-

products are something other than traditional depilatory products. Reckitt is also creating

potential health and safety risks for consumers by publishing depictions of its VEET products,

which contain dangerous chemicals, being used in a casual and cavalier manner that is

inconsistent with the directions and warnings in the packaging.

49.    Gillette has been, and continues to be, irreparably damaged by Reckitt's false

advertising and unfair competition in an amount to be proven at trial and in a manner and amount

that cannot be fully measured or compensated in economic terms. Reckitt's actions have caused,

and will continue to cause, irreparable harm to the business, market, reputation, and goodwill

enjoyed by Gillette. Such irreparable harm will continue unless Reckitt's actions are enjoined

immediately.

50.    If, and to the extent, the harm to Gillette caused by Reckitt's actions is measurable

and compensable, Gillette seeks damages from Reckitt in an amount to be proven at trial.

PRAYER FOR RELIEF

WHEREFORE, Gillette respectfully requests that the Court:

A.    Declare that Reckitt has violated Section 43(a) of the Lanham Act, 15 U.S.C. §

1125(a);

B.    Declare that Reckitt has violated Section 2(a) of the Massachusetts Consumer

Protection Act, Mass. Gen. Laws ch. 93A, § 2(a);

C.    Enjoin Reckitt from using, in the advertising and promotion of its depilatory

products, the terms "bladeless razor" and "bladeless razor kit";

D.    Enjoin Reckitt from making, in the advertising and promotion of its depilatory

products, any claims or suggestions that any of the VEET products are effective for the ordinary

user in removing leg hair within a three minute timeframe or in a timeframe superior to other hair removal techniques, including shaving;

E.     Enjoin Reckitt from depicting the use of its VEET depilatory products, in television commercials and other advertising media, in ways inconsistent with the product packaging instructions and specifically from depicting models wearing street clothing while using the products or using them in any part of the house other than an empty tub or shower;

F.     Order Reckitt to promptly replace the existing product packaging for the VEET "Rasera" and VEET Mousse products with packaging that does not contain the above-referenced misleading statements, suggestions, and depictions;

G.     Order Reckitt to conspicuously label its VEET "Rasera" product as a depilatory or depilatory crème;

H.     As to Counts One and Two, direct an accounting by Reckitt of its profits by reason of false advertising;

I.     As to Count One, award Gillette its damages arising from Reckitt's false advertising, trebling Gillette's recovery pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117, to the extent that Reckitt's violations are deemed to have been willful and intentional;

J.     As to Count Two, award Gillette its damages, attorneys' fees, and costs of litigation arising from Reckitt's unfair competition and deceptive acts and practices, doubling or trebling Gillette's damages pursuant to Section 11 of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, §11, to the extent that Reckitt's violations are deemed to have been willful and knowing;  and

K.     Enter such other and further relief as the Court may deem to be just and proper under the facts and circumstances of this case.

JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable in this complaint.


The Gillette Company


By its attorneys,

*William L. Patton*

*Levina Wong*

William L. Patton (BBO No. 391640)
Levina Wong (BBO No. 54510)
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
(617) 951-7000

Of counsel:
James M. Spears
Peter M. Brody
David M. Menichetti
ROPES & GRAY LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC 20005-3948
(202) 508-4600

*Attorneys for Plaintiff*

Dated: June 7, 2004

-15-

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)____The Gillette Company v.
   Reckitt Benckiser, Inc.

FILED
IN CLERKS OFFICE

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL
   COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

2004 JUN -3 A 8: 29

U.S. DISTRICT COURT
DISTRICT OF MASS.

____ I.      160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

__X__ II.    195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,     *Also complete AO 120 or AO 121
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.        for patent, trademark or copyright cases

____ III.    110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.

____ IV.     220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.

04 11222 MLW

____ V.      150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE
   HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

   _____

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS
   COURT?

                                                          YES        (NO)

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE
   PUBLIC INTEREST?   (SEE 28 USC §2403)

                                                          YES        (NO)
   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?

                                                          YES        (NO)

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE
   28 USC §2284?

                                                          YES        (NO)

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE
   COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE
   SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).

                                                          (YES)      NO

   A.    IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

         (EASTERN DIVISION)         CENTRAL DIVISION              WESTERN DIVISION

   B.    IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING
         GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

         EASTERN DIVISION           CENTRAL DIVISION              WESTERN DIVISION

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME ____William L. Patton

ADDRESS ____Ropes & Gray, One International Place, Boston, MA  02110

TELEPHONE NO. ____(617) 951-7000

(Cover sheet local.wpd - 11/27/00)

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

The Gillette Company

FILED IN CLERKS OFFICE

**DEFENDANTS**

Reckitt Benckiser, Inc.

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

2004 JUN -7 A 8: 29

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)

U.S. DISTRICT COURT
DISTRICT OF MASS.

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

William L. Patton    (617) 951-7000
Ropes & Gray LLP
One International Place, Boston, MA    02110

Attorneys (If Known)

## II. BASIS OF JURISDICTION    (Place an "X" in One Box Only)

☐ 1  U.S. Government
      Plaintiff

☒ 3  Federal Question
      (U.S. Government Not a Party)

☐ 2  U.S. Government
      Defendant

☐ 4  Diversity
      (Indicate Citizenship of Parties
       in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                    and One Box for Defendant)

|  | PLF | DEF |  | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT    (Place an "X" in One Box Only)

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment
       & Enforcement of
☐ Judgment Medicare Act
☐ 152 Recovery of Defaulted
       Student Loans
       (Excl. Veterans)
☐ 153 Recovery of Overpayment
       of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product
       Liability
☐ 320 Assault, Libel &
       Slander
☐ 330 Federal Employers'
       Liability
☐ 340 Marine
☐ 345 Marine Product
       Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle
       Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury—
       Med. Malpractice
☐ 365 Personal Injury —
       Product Liability
☐ 368 Asbestos Personal
       Injury Product
       Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal
       Property Damage
☐ 385 Property Damage
       Product Liability

### CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/
       Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

### PRISONER PETITIONS
☐ 510 Motions to Vacate
       Sentence
       Habeas Corpus:
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

### FORFEITURE/PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure
       of Property 21 USC
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational
       Safety/Health
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards
       Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt.Reporting
       & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc.
       Security Act

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal
       28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff
       or Defendant)
☐ 871 IRS—Third Party
       26 USC 7609

### OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and
       Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/
       Exchange
☐ 875 Customer Challenge
       12 USC 3410
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of
       Information Act
☐ 900 Appeal of Fee
       Determination Under Equal Access to
       Justice
☒ 950 Constitutionality of
       State Statutes
☐ 890 Other Statutory Actions

## V. ORIGIN    (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

This action is brought under 15 U.S.C., §1125(a). The Defendant is marketing and selling goods by making false and misleading representations.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $  Damages and injunctive relief

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE _____    DOCKET NUMBER _____

DATE    June 7, 2004

SIGNATURE OF ATTORNEY OF RECORD    William L. Patton

FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____