UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THE GILETTE COMPANY, | : | 04 Civ. 11222 (MLW) |
| Plaintiff, | : | |
| v. | : | |
| RECKITT BENCKISER, INC., | : | |
| Defendant. | : | |

DEFENDANT RECKITT BENCKISER, INC.'S MOTION TO TRANSFER
AND MEMORANDUM OF LAW

PRELIMINARY STATEMENT

Defendant Reckitt Benckiser, Inc. ("Reckitt") hereby moves this Court for an order, pursuant to 28 U.S.C. § 1404(a), transferring this action to the Southern District of New York, where a previously filed action is currently pending, both for the convenience of parties and witnesses and in the interest of justice, and submits this memorandum of law in support of its motion.  The relevant facts are as set forth in the affidavit of Mark A. Fowler ("Fowler Aff."), sworn to June 9, 2004, with exhibits annexed.

The Gillette Company ("Gillette") filed this action on Monday, June 7, 2004.  Gillette's filing followed the earlier filing, on June 4, 2004, of a declaratory judgment action by Reckitt in the Southern District of New York based on the same controversy, namely Reckitt's right to continue distribution of and advertising for its new VEET Rasera Bladeless Razor kit and to continue airing a television commercial for its VEET mousse hair remover.  In an apparent effort to suppress competition, Gillette seeks to prevent Reckitt from offering hair removal products supported by advertising campaigns that advise women of an alternative to shaving.  Gillette, upon information and belief, enjoys a dominant position in the worldwide women's hair removal market.

Reckitt filed its declaratory judgment action in New York on June 4, 2004, after Gillette, over the course of several months, complained about the use of the phrase "bladeless razor," but took no action in the United States, Reckitt's largest market, to litigate its claims.

As the plaintiff in an earlier filed action, defendant Reckitt is entitled to a strong presumption that New York is the proper forum.  Gillette cannot rebut that presumption, because Reckitt has chosen a forum that is more convenient for litigation.  Of critical importance, the advertising agencies, public relations firm and research firms that were responsible, in part, for the television commercials at issue are located in the New York metropolitan area beyond the jurisdiction of this Court.  The New York forum would also be more convenient for Reckitt, which is located in New Jersey a short distance from the courthouse.  The plaintiff will not be inconvenienced by transfer to the Southern District of New York, where it maintains a substantial presence.  This is particularly true because Gillette will not have relevant fact witnesses, since the action centers on Reckitt's branding and advertising and its impact on the public.  Transfer of this matter to the Southern District of New York, where the earlier commenced action is pending, would greatly reduce the costs, the inconvenience, the duplication of effort, and the unnecessary burden on the judicial system that will otherwise result from litigating the same issues in two different courts.

**STATEMENT OF FACTS**

**Background**

Reckitt is a manufacturer and seller of many well-known consumer products, including, LYSOL® household cleaning products, AIRWICK® room deodorizers, SPRAY 'N WASH® laundry stain removers, ELECTRASOL® automatic dishwashing detergent, FRENCH'S® condiments, and the products at issue here, VEET® hair removal gel creams and mousse.  Fowler Aff., ¶ 2.

The new VEET Rasera Bladeless Razor kit comes in a clear plastic package through which the contents are plainly visible. Fowler Aff., ¶ 5.  It is immediately clear upon inspection

2

of the package that the VEET Rasera Bladeless Razor kit includes an aerosol can of VEET hair removal gel cream and a razor-shaped tool, which does not contain a blade, used for removing the cream in a motion that resembles shaving. Id. The can, which, again, is visible through the blister pack, conspicuously notes that it is "Hair Removal Gel Cream," which is the common generic term for the product. Id. It is also evident from inspection of the "bladeless razor" that it does not have a blade, nor could it accept one. A disclaimer on the back of the product confirms "this kit does not contain a razor blade." Id.

**History of the Dispute**

As early as July 2003, Reckitt first began alerting customers in the trade that it would be introducing the Bladeless Razor kit in 2004. Fowler Aff., ¶ 4. Specifically, the company announced that it would begin selling in the first quarter of 2004 a product known as VEET Rasera Bladeless Razor kit, which would include a hair removal gel cream, along with a plastic razor-shaped tool for removing the gel cream. Id. By early November 2003, one or more industry trade publications were running articles about the launch of the VEET Rasera Bladeless Razor kit in connection with discussions of Gillette's products. Id.

Reckitt began shipping the product in the United States on January 2, 2004. Fowler Aff., ¶ 6. Gillette has thus presumably been aware of Reckitt's product launch and the use of the terms "bladeless razor," "bladeless razor kit" and "Rasera" for many months. Id. Indeed, Gillette first complained about the use of the name "bladeless razor" in a letter to Reckitt's outside counsel dated February 12, 2004, asserting that the use of this phrase constituted false advertising. Id.

After it sent the letter, Gillette took no action in the United States for three and one-half months. Fowler Aff., ¶ 7. However, Gillette commenced judicial and administrative proceedings in certain European countries and continued to threaten to take similar action in other countries in which the new product was sold. Fowler Aff., ¶ 8. It thus appeared that Gillette had likely determined that it could not state a claim in the United States and had chosen to forego litigation here. Id.

3

In the meantime, the product roll-out in the United States continued and by the end of February, 2004, the product was in twenty-nine (29%) percent of the drug store outlets, nine percent (9%) of the intended mass-market outlets and four percent (4%) of the grocery outlets where it is scheduled to be sold. Fowler Aff., ¶ 9.  By the end of March, the Bladeless Razor kit was on sale in forty percent (40%) of both drug store outlets and mass-market outlets, as well as eleven percent (11%) of grocery stores where it is ultimately scheduled to be sold. Fowler Aff., ¶ 10.  Again, despite its threat of similar enforcement actions in other countries, by the end of March, Gillette had taken no action in the United States. Id.

On or about April 5, 2004, Reckitt commenced its nationwide television advertising campaign for the VEET Rasera Bladeless Razor kit in the United States. Fowler Aff., ¶ 11.  Among other messages delivered by the television commercial is the fact that using the product results in smooth skin that lasts up to twice as long as shaving with a bladed razor. Id.  On or about May 3, 2004, Reckitt began airing the television commercials for VEET mousse hair remover at issue in this action. Id.  During this time, Reckitt continued to be concerned that Gillette was filing new actions in various countries, thus potentially leaving the threat of litigation hanging over Reckitt's branding and roll-out of the new VEET Rasera Bladeless Razor kit in the United States. Id.  Nevertheless, Gillette voiced no objection in the United States for nearly two additional months. Id.

Finally, on or about May 24, 2004, five months after the launch of the new product, nearly two months after the first commercial for it aired, three weeks after the first mousse commercial aired, and at a time when distribution of the product has reached seventy percent, ninety-one percent, and forty-five percent of the intended drug store outlets, mass market outlets and grocery outlets, respectively, Gillette sent a cease and desist letter to Reckitt complaining about the use of "bladeless razor" and the television commercials. Fowler Aff., ¶ 12.  The letter was improperly addressed and therefore did not reach Reckitt until May 26, 2004, just before the Memorial Day holiday weekend. Id.  The following day, Gillette sent a second letter to Reckitt demanding that Gillette have Reckitt's response by June 2, 2004. Id.  Like previous letters, the

May 27, 2004 letter threatened to initiate legal proceedings if Reckitt did not provide a prompt substantive response. Id.  Upon receipt of the second letter, Reckitt advised Gillette that, due to the holiday weekend, it would not be in a position to substantively discuss the letter on June 2, but that it would advise Gillette by that date regarding when it would be prepared to respond in full. Id.  On June 2, 2004, (the date originally requested by Gillette) Reckitt advised Gillette that it was prepared to have a telephone conference the very next day to respond to the letter. Id. Gillette, however, was unable to participate in a telephone conference on June 3, 2004, and one was scheduled for June 4, 2004 instead. Id.

In the interim, based on the steps taken by Gillette in Europe, the tone of the letter, and Reckitt's unwillingness to cease use of the designation "Bladeless Razor" or comply with Gillette's other unreasonable demands, Reckitt concluded that it needed clarification of its continued right to air the commercial and distribute its new product in its current packaging, especially in light of Gillette's apparent worldwide effort to interfere with Reckitt's advertising and marketing. Fowler Aff., ¶ 13.  Accordingly, Reckitt prepared a declaratory judgment complaint in the event that the parties were unable to resolve the matter during the June 4, 2004 call. Id.

On June 4, 2004, the parties participated in the scheduled telephone conference, which was not fruitful. Fowler Aff., ¶ 14.  In a follow-up call to Gillette's attorneys later that same afternoon, Reckitt advised Gillette that it was not willing to accede to its demands and that it would take all steps necessary to protect its rights and acknowledged that Gillette might do the same. Id.  As a means to that end, Reckitt filed its declaratory judgment complaint in the Southern District of New York. Fowler Aff., Exh. A.  That action, entitled, Reckitt Benckiser, Inc. v. The Gillette Company, 04 Civ. 04207 (BSJ), is pending before Judge Barbara S. Jones. Fowler Aff., ¶ 14.  The New York action involves the same parties, the same facts, and the same issues as this action.[1] Fowler Aff., Exh. A.

---

[1]  Although this action also includes a claim for violation of the Massachusetts Consumer Protection Act lacking from the New York action, the basis for that claim is the same as the Lanham Act claims.

563515_4

**As the First to File, Reckitt's Choice of Forum Should Be Respected**

Gillette is a Delaware corporation. Id.  Although headquartered in Massachusetts, Gillette, one of the leading consumer goods products in the United States, cannot possibly dispute that the Southern District of New York has jurisdiction over it with respect to the allegations in this action or that it would be unduly burdensome to litigate in New York.  Indeed, it has frequently litigated in New York.

Reckitt is headquartered in Northern New Jersey. Fowler Aff., ¶ 17.  New York is thus a more convenient forum for Reckitt's employees, who are likely witnesses.  As set forth more fully in the Fowler affidavit, several non-party witnesses, including advertising and public relations executives, as well as employees of a market research firm are expected to testify as to the development and airing of the commercials and public relations campaign for the launch of the VEET Rasera Bladeless Razor kit, as well as consumer focus group reactions to the concepts and the final versions of the television commercials at issue in this action. Fowler Aff., ¶¶ 24-32. All these non-party witnesses are located in the New York metropolitan area and are beyond the jurisdiction of this Court. Id.  There is no guarantee that any of these non-party witnesses will remain employed by their current employers, or be willing to provide testimony in Boston at a trial. Fowler Aff., ¶ 33.

In contrast, Gillette is not likely to have many fact witnesses since the action does not primarily turn on actions taken by Gillette.  Rather, the questions raised by this action relate to the development and marketing of the VEET Rasera Bladeless Razor kit and advertising for the VEET mousse hair remover, as well as consumer reactions thereto.

Transfer to the Southern District of New York will eliminate duplicative discovery and motion practice, and will enable one judge to handle all aspects of the litigation.  This action can be consolidated with the pending declaratory judgment action in New York for a single trial, thereby further reducing the costs and inconvenience to the parties and to the witnesses.

6

## ARGUMENT

## THIS ACTION SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK

Motions to transfer are governed by 28 U.S.C. § 1404(a), which provides that:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought.

The Supreme Court has noted that Section 1404(a) "reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by consideration of convenience and justice." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964). In determining whether to transfer an action, the courts take into account a variety of factors including: the order in which the district court obtained jurisdiction, the possibility of consolidation, the convenience of parties and witnesses, and the availability of documents. See Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000); Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987). "Where identical actions are proceeding concurrently in two federal courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is generally preferred in a choice-of-venue decision." Cianbro Corp., 814 F.2d at 11. In this instance, defendant's choice of New York as a forum, the potential consolidation, and the convenience of the witnesses and parties, would be best served by transfer to the Southern District of New York.

## A.    THE CHOICE OF FORUM OF THE FIRST TO FILE IS ENTITLED TO WEIGHT

There is a "strong presumption" favoring the choice of forum of the first to file, even when the first filed action is a claim for declaratory judgment. The Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc., 249 F. Supp.2d 12 (D. Mass 2002); GSI Lumonics, Inv. v. BioDiscovery, Inc., 12 F. Supp.2d 99, 105 (D. Mass 2000) ("fact that defendant's action is for declaratory relief does not bar the application of the first-filed presumption"); Biogen, Inc. v. Schering AG, 954 F. Supp. 391, 398 (D. Mass. 1996); TPM Holdings, Inc. v. Intra-Gold Industries, Inc., 91 F.3d 1, 4 (1st Cir. 1996) ("Where the overlap between the two suits is nearly

complete, the usual practice is for the court that first had jurisdiction to resolve the issues and the other court to defer"). Here, Reckitt first filed a declaratory judgment action in its chosen forum of New York.

The First Circuit, in accord with the Supreme Court, has held that the first to file:

> should not be deprived of the presumed advantages of his home jurisdiction except upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative or legal problems.

Nowak v. Tak How Invs., Ltd., 84 F.3d 708, 720 (1st Cir. 1996) (quoting Koster v. Lumbermens Mut. Cas. Co, 330 U.S. 518, 524 (1947)); see also Holmes Group, Inc., 249 F. Supp. 2d at 16 (stating that "preference for the first-filed action may be overcome where (1) there are special circumstances justifying a transfer or (2) convenience favors the later-filed action").

Reckitt filed its declaratory judgment complaint on June 4, 2004, in order to clarify its right to use its current brand name, packaging and commercials, and in light of its reasonable apprehension that Gillette would seek to prevent Reckitt from continuing the roll-out of its new Bladeless Razor product and the supporting advertising for the product. Thus, because Reckitt was the first to file, Gillette has the burden of establishing facts that overcome the strong presumption that New York is the proper forum in favor of maintaining the action in this jurisdiction. Gillette cannot meet this burden. Reckitt selected New York as a forum for litigation based on the presence of party and non-party witnesses and documents, the majority of whom, as set forth in the Fowler affidavit, are in the New York metropolitan area.

## B.    TRANSFER WOULD FACILITATE CONSOLIDATION WITH THE PENDING NEW YORK ACTION

As fully discussed in the statement of facts, a complaint for declaratory judgment was filed by Reckitt in the Southern District of New York prior to Gillette's filing of the complaint in this action. The fundamental issues in the New York action, namely, the explicit and implicit

563515_4

meaning of Reckitt's packaging and advertising, and the consumer interpretation thereof are identical to the issues that will be at the heart of this case. There is no need to proliferate the proceedings and increase the costs by litigating the same issues in two forums at once.

The potential for consolidating the present action with the related New York action is an important factor favoring transfer. Cianbro Corp., 814 F.2d at 11; Princess House, Inc. v. Lindsey, 136 F.R.D. 16, 21 (D. Mass. 1991). In fact, the U.S. Supreme Court has indicated that great weight should be given to this factor:

> To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.

Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 26 (1960); see also Cianbro Corp., 814 F.2d at 11 ("Where identical actions are proceeding concurrently in two federal courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is generally preferred in a choice-of-venue decision").

## C.  THE CONVENIENCE OF THE NON-PARTY WITNESSES FAVORS TRANSFER

The convenience of non-party witnesses is another significant factor in determining whether a case should be transferred. See Princess House, 136 F.R.D. at 20 (court placed "great weight" on the convenience of non-party witnesses). As the court in Princess House explained, in analyzing the convenience of witnesses, the cost of obtaining the presence of the witnesses should be considered. Here, where there are virtually no witnesses located in Massachusetts and Reckitt witnesses and non-party witnesses, who will testify as to the product branding and the development of the television commercials at issue in this action, are located in and around New York, it will be more expensive to obtain the witnesses' presence in Massachusetts, if it is even possible. Here, the non-party witnesses located in the New York area cannot be compelled to testify in Massachusetts, but rather only in the New York action already pending.

9

### D. NO OTHER FACTORS NEGATE THE ADVISABILITY OF TRANSFER

Reckitt acknowledges that the relevant documents and records, although primarily located in New York and New Jersey, would doubtless be easily copied and transported and their location should be entitled to little weight. See American Standard, Inc. v. Bendix Corp., 487 F. Supp. 254, 264 (W.D. Mo. 1980). Gillette can point to no other countervailing factors that weigh against the "strong presumption" favoring Reckitt's choice of New York as a forum for this dispute. Since the level of docket congestion is higher in Massachusetts than in New York, this factor somewhat favors transfer to New York or is a neutral factor.[2]

### CONCLUSION

For the reasons set forth above, this action should be transferred to the U.S. District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

Dated: New York, New York
          June 10, 2004

Respectfully submitted,

GADSBY HANNAH LLP

By: /s/ Daniel J. Kelly
      Daniel J. Kelly
225 Franklin Street
Boston, Massachusetts 02110
Tel: (617) 345-7000
Fax: (617) 345-7050
E-mail: dkelly@ghlaw.com

Attorneys for Defendant
RECKITT BENCKISER, INC.

---

[2] The median time – in months – from filing to trial for civil cases in New York was 22.6 months in the Southern District of New York for the twelve month period ending September 30, 2003, versus 28.5 months for the same period in the District of Massachusetts. See U.S. District Court Judicial Caseload Profile, Federal Court Management Statistics 2003, available at http://www.uscourts.gov/cgi-bin/cmsd2003.pl. Also during that time period, the median time from filing to disposition in New York was 8.4 months versus 10.7 months for Massachusetts. Id.

563515_4

SATTERLEE STEPHENS BURKE & BURKE
James Rittinger
Mark A. Fowler
Mark Lerner
(Of Counsel)
230 Park Avenue
New York, New York 10169
Tel: (212) 818-9200
Fax: (212) 818-9606
E-mail: mlerner@ssbb.com


Counsel for the defendant, Reckitt Benckiser, Inc., here by certifies in accordance with Local Rule 7.1(A)(2) that counsel has contacted counsel for the plaintiff and has attempted in good faith to resolve or narrow the issues raised in the foregoing motion before filing this motion.

                                        /s/ Daniel J. Kelly_____
                                        Daniel J. Kelly

563515_4