UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **THE GILETTE COMPANY,** : | |
|         **Plaintiff,** : | 04 Civ. 11222 (MLW) |
| v. : | |
| **RECKITT BENCKISER, INC.,** : | |
|         **Defendant.** : | |

MARK A. FOWLER, being duly sworn, deposes and says:

1.  I am a member of the law firm Satterlee Stephens Burke & Burke LLP, attorneys for defendant, Reckitt Benckiser, Inc. ("Reckitt"). I make this affidavit in support of Reckitt's Motion to Transfer. The facts herein are true to my own knowledge. Where I do not have personal knowledge of the facts, they are set forth upon information and belief.

**The Parties**

2.  Reckitt is a manufacturer and seller of many well-known consumer products, including, LYSOL® household cleaning products, AIRWICK® room deodorizers, SPRAY 'N WASH® laundry stain removers, ELECTRASOL® automatic dishwashing detergent, FRENCH'S® condiments, and the products at issue here, VEET® hair removal gel creams and mousse.

3.  Upon information and belief, Gillette is the world's leading manufacturer of women's hair removal products. Upon further information and belief, Gillette's self-proclaimed "global blade value share" of the worldwide shaving market is 72.8%.

**History of the Dispute**

4.  As early as July 2003, Reckitt first began alerting customers that it would

563624_2

be introducing the Bladeless Razor kit in 2004.  Specifically, the company announced that it would begin selling in the first quarter of 2004 a product known as VEET Rasera Bladeless Razor kit, which would include a hair removal gel cream, along with a plastic razor-shaped tool for removing the gel cream.  By early November 2003, one or more industry trade publications were running articles about the launch of the VEET Rasera Bladeless Razor kit in connection with discussions of Gillette's products.

5. The new VEET Rasera Bladeless Razor kit comes in a clear plastic package through which the contents are plainly visible.  It is immediately clear upon inspection of the package that the VEET Rasera Bladeless Razor kit includes an aerosol can of VEET hair removal gel cream and a razor-shaped tool, which does not contain a blade, used for removing the cream in a motion that resembles shaving.  The can, which, again, is visible through the blister pack, conspicuously notes that it is "Hair Removal Gel Cream," which is the common generic term for the product.  It is also evident from inspection of the "bladeless razor" that it does not have a blade, nor could it accept one.  A disclaimer on the back of the product confirms "this kit does not contain a razor blade."

6. Reckitt began shipping the product in the United States on January 2, 2004.  Upon information and belief, Gillette has thus been aware of Reckitt's product launch and the use of the terms "bladeless razor," "bladeless razor kit" and "Rasera" for many months.  Indeed, Gillette first complained about the use of the name "bladeless razor" in a letter to Reckitt's outside counsel dated February 12, 2004, asserting that the use of this phrase constituted false advertising.

7. Upon information and belief, after it sent the February 12, 2004 letter, Gillette took no action in the United States for three and one-half months.

563624_2

8. Upon information and belief, Gillette commenced judicial and administrative proceedings in certain European countries and continued to threaten to take similar action in other countries in which the new product was sold. It appeared that Gillette had likely determined that it could not state a claim in the United States and had thus chosen to forego litigation here.

9. In the meantime, the product roll-out in the United States continued and by the end of February, 2004, the product was in twenty-nine (29%) percent of the drug store outlets, nine percent (9%) of the intended mass-market outlets and four percent (4%) of the grocery outlets where it is scheduled to be sold.

10. By the end of March, the Bladeless Razor kit was on sale in forty percent (40%) of both drug store outlets and mass-market outlets, as well as eleven percent (11%) of grocery stores where it is ultimately scheduled to be sold. Again, despite its threat of similar enforcement actions in other countries, by the end of March, Gillette had taken no action in the United States.

11. On or about April 5, 2004, Reckitt commenced its nationwide television advertising campaign for the VEET Rasera Bladeless Razor kit in the United States. Among other messages delivered by the television commercial is the fact that using the product results in smooth skin that lasts up to twice as long as shaving with a bladed razor. On or about May 3, 2004, Reckitt began airing the television commercials for VEET mousse hair remover at issue in this action. During this time, Reckitt continued to be concerned that Gillette was filing actions in various countries, thus potentially leaving the threat of litigation hanging over Reckitt's roll-out of the new VEET Rasera Bladeless Razor kit in the United States. Nonetheless, Gillette voiced no objection in the United States for nearly two months.

563624_2

12. Finally, on or about May 24, 2004, five months after the launch of the new product, nearly two months after the first commercial for it aired, three weeks after the first mousse commercial aired, and at a time when distribution of the Bladeless Razor product has reached seventy percent, ninety-one percent, and forty-five percent of the intended drug store outlets, mass market outlets and grocery outlets, respectively, Gillette sent a cease and desist letter to Reckitt complaining about the use of "bladeless razor" and the television commercials. The letter was improperly addressed and therefore did not reach Reckitt until May 26, 2004, just before the Memorial Day holiday weekend. The following day, Gillette sent a second letter to Reckitt demanding that Gillette have Reckitt's response by June 2, 2004. Like previous letters, the May 27, 2004 letter threatened to initiate legal proceedings if Reckitt did not provide a prompt substantive response. Upon receipt of the second letter, Reckitt advised Gillette that, due to the holiday weekend, it would not be in a position able to substantively discuss the letter on June 2, but that it would advise Gillette by that date regarding when it would be prepared to respond in full. On June 2, 2004, (the date originally requested by Gillette) Reckitt advised Gillette that it was prepared to have a telephone conference the very next day to respond to the letter. Gillette, however, was unable to participate in a telephone conference on June 3, 2004, and one was scheduled for June 4, 2004 instead.

13. In the interim, based on the steps taken by Gillette in Europe, the tone of the letter, and Reckitt's unwillingness to cease use of the term "bladeless razor" or comply with Gillette's other demands, Reckitt concluded that it needed clarification of its continued right to air the commercial and distribute its new product in its current packaging, especially in light of Gillette's apparent attempt to interfere with Reckitt's advertising and marketing. Accordingly, Reckitt prepared a declaratory judgment complaint in the event that the parties were unable to

563624_2

resolve the matter during the June 4, 2004 call.

14. On June 4, 2004, the parties participated in the scheduled telephone conference, which was not fruitful. In a follow-up call to Gillette's attorneys later that same afternoon, Reckitt advised Gillette that it was not willing to accede to its demands and that it would take all steps necessary to protect its rights and acknowledged that Gillette might do the same. As a means to that end, Reckitt filed its declaratory judgment complaint in the Southern District of New York. That action, entitled, Reckitt Benckiser, Inc. v. The Gillette Company, 04 Civ. 04207 (BSJ), is pending before Judge Barbara S. Jones. A copy of the Complaint in the New York action is annexed hereto as Exhibit A. The New York action involves the same parties, the same facts, and the same issues as this action.

**Reckitt's Choice of Forum Should Be Respected**

15. Because the New York action was the first filed, this action should be transferred to New York for consolidation with that action. In addition, New York is the more convenient forum for the majority of anticipated party, and more importantly, non-party witnesses.

16. Upon information and belief, Gillette is a Delaware corporation with its headquarters in Boston, Massachusetts.

17. Party witnesses for Reckitt in this dispute will include, Christin Lambert ("Lambert"), Senior Brand Manager for VEET, Grace Liljemark ("Liljemark"), Associate Brand Manager for VEET, Heidi Fuentes ("Fuentes"), Scientific Services Manager for Fabric and Personal Care, Alan Richter ("Richter"), Manager of Global Statistics and Knowledge Management, David Acher ("Acher"), Director of Research and Development for Personal Care, and Heidi Burrows ("Burrows"), Global Category Marketing Manager for Depilatories. Reckitt is headquartered in New Jersey.

5

18. Lambert, who lives in Hoboken, New Jersey – immediately across the river from New York City – was responsible for overseeing the development of the Bladeless Razor kit television commercial from the idea stages to launch, including the filming of the commercial, which she attended, and the planning of scheduling for the advertisements in the United States. She will testify as to the communication objectives for the television commercial. She will also testify as to the selection of the television commercial concept for use in the United States, the approval process for the commercial, the testing of the commercial concepts and final commercial, as well as the production of the commercial and the creation of the media plan.

19. Liljemark, who lives in Montclair, New Jersey – less than 20 miles from New York City – will testify as to the roll-out of the new VEET Rasera Bladeless Razor kit in the United States.

20. Fuentes, who lives in Clifton, New Jersey – less than twenty miles from New York City – is responsible for claim substantiation for advertising, and will testify as to the support for claims made on the products as well as in the television commercials.

21. Richter, who lives in Branchberg, New Jersey – approximately 45 miles from New York City, but 270 miles from Boston – will testify as to his review and approval of the claim support protocol and final report.

22. Acher, who lives in Beverly, England, will testify as to research related to the performance of the products, including the product characteristics and consumer satisfaction as they may relate to claims, if any, in the commercials.

23. Burrows, who lives in Oxford, England, will testify as to the development of the branding for the VEET Rasera Bladeless Razor kit as well as the commercials at issue and the communication objectives for the commercials.

563624_2

24. Anticipated non-party witnesses for Reckitt in this matter include employees of J. Walter Thompson ("JWT"), CooperKatz & Company, and Millwood Brown Intelliquest ("Millwood"), Reckitt's advertising agency, public relations firm and research firm, respectively. In addition, MPG, a New York based advertising agency, is responsible for media planning and buying for Reckitt's commercials.

25. JWT, Reckitt's advertising agency is headquarted in New York City at 466 Lexington Avenue. JWT was responsible, in part, for the development of the television commercials at issue in this action. It can testify as to the underlying concepts driving the commercials, the intended messages and the basis for the advertising copy.

26. Employees of JWT who are expected to testify as to the development of the advertising campaign include, Ellen Hyde Pace, Executive Vice President, Global Business Director, and Karina Fassett, Senior Partner, Management Director, both of whom reside in New York City.

27. CooperKatz & Company, located at 708 Third Avenue, New York, New York, is the public relations agency of record for the Veet brand.

28. The following employees of CooperKatz & Company were involved in designing and executing a public relations program related to Veet brand in support the United States introduction of the Veet Rasera Bladeless Razor Kit:

    (a)    Andrew Cooper, Principal

    (b)    Ralph A. Katz, Principal

    (c)    Anne-Elizabeth Green, Senior Vice President

    (d)    Faye Nikolaidis, Account Supervisor

29. Each of these witnesses will testify about the development of the

campaign to meet the communications objectives set by Reckitt regarding the introduction of the new product.

30. Each of CooperKatz employees lives in the New York metropolitan area.

31. In addition, Millwood employees Jack Lett and Aaron Peck, each of whom lives in Southern Connecticut, will testify as to the consumer reaction to the storyboards for the commercial for VEET Rasera Bladeless Razor kit, as well as the final commercial. Mr. Lett works out of the New York City office of Millwood and Mr. Peck is currently working on assignment in Baltimore.

32. MPG employees, Marissa Shapiro, VP, Account Director Planning, Robin Rosing, Media Planning Supervisor, and Nicole Tursi, Media Planner, all of whom live in New York City, will testify as to the development of strategy for media planning and the particular media planning for the commercials at issue.

33. There is, of course, no guarantee that any of these foregoing non-party witnesses will remain employed by their current employers, or be willing to provide testimony in Boston at a trial.

Signed under the pains and penalties of perjury this 10th day of June, 2003.

/s/ Mark A. Fowler
Mark A. Fowler