UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE GILLETTE COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> RECKITT BENCKISER, INC., ) <br> ) <br> Defendant. ) | Civil Action No. 04 Civ. 11222 (MLW) |

## OPPOSITION OF THE GILLETTE COMPANY TO DEFENDANT RECKITT BENCKISER, INC.'S MOTION TO TRANSFER

Less than one business day before The Gillette Company ("Gillette") filed this action for injunctive relief and damages arising out of a scheme of false advertising, Defendant Reckitt Benckiser, Inc. ("Reckitt"), plainly anticipating Gillette's suit and hoping to gain a more hospitable venue, filed an improper anticipatory action for declaratory judgment in the Southern District of New York. In a corollary maneuver, Reckitt has now filed a motion to transfer Gillette's suit to the Southern District ("Motion"), on the spurious grounds that Reckitt is entitled to the benefit of the "first-to-file" rule and that New York is a more convenient venue for resolution of Gillette's claims. Although Reckitt's motion is without merit, the Court should defer any ruling on the motion at this time. Gillette has filed a motion to dismiss or stay the New York case in favor of the action in this Court, and under the law of both this District and the Southern District of New York, this Court must defer to the New York court's decision on the proper venue for resolution of the parties' dispute. In the event that the Southern District of New York stays Reckitt's suit, this Court should deny Reckitt's motion to transfer this case and permit Gillette to proceed expeditiously to prepare its claims for trial.

## Statement of Pertinent Facts

Gillette's claims in this suit concern Reckitt's recently launched television advertising campaign for a new women's depilatory hair removal product called the VEET "Rasera" and for a preexisting women's depilatory hair removal product called VEET Mousse. Two commercials, in particular, are the subject of this dispute, and they began airing, respectively, on or about April 5, 2004, and May 3, 2004. Compl. ¶¶ 16-21; Motion at 4; Fowler Affid. ¶ 11.

On or about April 15, 2004, ten days after Reckitt launched the first commercial, Gillette engaged outside counsel (the undersigned firm) to advise Gillette regarding possible claims against Reckitt for false and misleading advertising under federal and state law. Spears Decl. ¶ 11. On Wednesday, May 26, 2004, James M. Spears, one of the undersigned outside counsel for Gillette, sent a demand letter to Reckitt setting forth Gillette's concerns about Reckitt's advertising practices. Spears Decl. ¶ 14 & Ex. 2; Fowler Affid. ¶ 12.

Among other things, Gillette stated its belief that Reckitt was misleading consumers into believing the "Rasera" product, which features a plastic spatula or scraper shaped like a razor packaged together with a depilatory cream, was a "revolutionary" product more akin to a razor and shaving cream than to a traditional depilatory; that Reckitt substantially understated the amount of time needed for effective use of both the "Rasera" product and the Mousse product; and that these products could be used in a casual manner, in living areas of the home, while wearing street clothes, contrary to the explicit product-use instructions on the back of the package. The letter indicated Gillette's willingness to discuss its concerns with Reckitt, but noted the urgency of those concerns and stated that "we have been instructed to move expeditiously in the event that some sort of reasonable accommodation cannot be quickly reached." Spears Decl. ¶ 14 & Ex. 2 at 4.

On Thursday, May 27, 2004, Spears sent a follow-up letter to Mordan reiterating the urgency of the situation and advising him that Gillette had authorized the commencement of legal proceedings in the event that it did not receive a substantive response to the demand letter on or before June 2, 2004. Spears Decl. ¶ 15 & Ex. 3.

On Friday, May 28, 2004, Spears received a telephone call from Mark Fowler, who identified himself and his firm as outside counsel for Reckitt. Spears Decl. ¶ 16. Fowler stated that Reckitt would not be able to provide a substantive response to Gillette's demand letter by the June 2 deadline, because of the intervening Memorial Day holiday and the large number of individuals, both in the United States and the United Kingdom, that had to be consulted before a response could be made, but that he expected that Reckitt would be in a position to respond shortly thereafter. *Id.* Fowler stated that he would contact Spears again on or before June 2 to indicate when Reckitt would be prepared to provide a substantive response to the demand letter. *Id.* Spears reiterated the urgency of the matter for Gillette, but agreed to stand by for Fowler's call on June 2. Spears Decl. ¶ 17.

On Wednesday, June 2, 2004, Fowler called Spears and requested a telephone conference to discuss possible resolution of the dispute. Spears Decl. ¶ 18. Fowler emphasized that Reckitt wanted the conference to include in-house representatives of Gillette and Reckitt, in order to make the call "productive." *Id.* After further communications with respective clients, the telephone conference was scheduled for Friday, June 4, 2004 at 3:00 p.m. *Id.* Meanwhile, and unbeknownst to Gillette or its counsel, Reckitt's counsel already had prepared its complaint for filing in the Southern District: as the document reveals, the complaint was *signed and dated on June 3, 2004*, a day before the scheduled settlement conference. Spears Decl. ¶ 19 & Ex. 1 at 13.

The purported settlement conference took place as scheduled and included attorneys with both law firms and in-house counsel for both parties. Spears Decl. ¶ 20. After introductions, Gillette asked Reckitt for its response to the concerns raised in the demand letter. Reckitt responded by categorically dismissing each of Gillette's concerns, arguing that consumers were unlikely to be confused by the VEET advertising and disputing the need for any remedial measures. Spears Decl. ¶ 21. Reckitt asked what evidence Gillette had to support Gillette's claim that consumers were, in fact, confused by the VEET advertising and if Gillette would be willing to disclose such evidence to Reckitt. Spears Decl. ¶ 22. Gillette responded that it had evidence of a preliminary nature and agreed to consider the possibility of disclosing such evidence to Reckitt at an appropriate juncture. *Id.* Gillette, in turn, sought to clarify whether Reckitt was willing to make a proposal to resolve *any* of the concerns raised in the demand letter without any further action on Gillette's part. Reckitt's representatives responded that they were not sure and would get back to Gillette. Spears Decl. ¶ 23.

At approximately 4:20 p.m. that same day, Friday, June 4, Spears received a telephone call from Reckitt's attorneys, who stated that Reckitt would not enter into a tolling agreement and thought that the parties were "too far apart" for further settlement discussions to be productive. Spears Decl. ¶ 25. As Reckitt concedes in its motion, its attorneys then advised Spears that Reckitt "would take all steps necessary to protect its rights *and acknowledged that Gillette might do the same.*" Motion at 5 (emphasis added). Thus, as of that time, Reckitt itself admits that it expected Gillette to proceed with a lawsuit.

Sometime before 5:00 p.m. that same day, Reckitt, through Fowler's firm, electronically filed its pre-prepared and signed complaint in the Southern District action. Spears Decl. ¶ 26.

Neither Gillette nor its counsel received any notification of the filing of Reckitt's complaint from Reckitt until several days after its filing. *Id.*

Over the weekend, Gillette and Ropes & Gray, unaware of Reckitt's commencement of its declaratory judgment action in New York, readied Gillette's complaint for filing in this Court and, at 8:30 a.m. on Monday, June 7, 2004, filed that complaint. Spears Decl. ¶ 27. Gillette filed its action in the District of Massachusetts because that is where Gillette is headquartered and because that is where Gillette's fact witnesses reside, including witnesses who will testify about the economic harm that Reckitt's false and misleading advertising has caused and will cause Gillette. Spears Decl. ¶ 28. As Reckitt acknowledges, the factual and legal issues in this action are "identical" to those in the action filed by Reckitt in the Southern District, except that Gillette's suit includes a claim under the Massachusetts Consumer Protection Act. Motion at 9; *see id.* at 5 & n.1.

Gillette's complaint was served on Reckitt's registered agent for service of process in Massachusetts on the same day it was filed in court, June 7, 2004. Spears Decl. ¶ 30. Two days later, on June 9, 2004, Reckitt's complaint was served on Gillette via service on the New York State Secretary of State. *Id.* On June 10, 2004, Reckitt filed the instant Motion. Spears Dec'l ¶ 31. On June 23, 2004, Gillette filed a motion for a dismissal or a stay of the action pending in the Southern District. Spears Decl. ¶ 32. A copy of that motion is attached to the Spears Declaration as Gillette's Exhibit 4.

## Argument

### I. THE OUTCOME OF RECKITT'S TRANSFER MOTION DEPENDS ON WHETHER THE NEW YORK ACTION IS STAYED.

This District, like the Southern District of New York, follows the rule that, when parallel actions have been filed in two different federal courts, the court in which the first-filed action is pending decides which action will proceed. *E.g., Insurance Co. of N. Am. v. International Ins. Co.*, No. 95-10203-RCL, 1995 WL 599104 at *4 (D. Mass. Sept. 7, 1995); *accord Pem Am., Inc. v. Lambert*, No. 03 Civ. 3706, 2003 WL 22383369, at *2 (S.D.N.Y. Oct.17, 2003); *MSK Ins., Ltd. v. Employers Reinsurance Corp.*, 212 F. Supp.2d 266, 267 (S.D.N.Y.2002). Thus, this Court should defer any ruling on Reckitt's Motion pending the New York court's decision on whether to stay Reckitt's suit in favor of Gillette's action. Deferring that ruling comports not only with precedent, but also with logic and judicial economy. The arguments in Reckitt's Motion are based largely on the assumption that the New York suit was properly instituted and will proceed in that venue. *See* Motion at 7-9. If the New York court decides that Reckitt's suit was an improper anticipatory action that is not entitled to the benefit of the "first-to-file" rule, and thus should be stayed in favor of this action, Reckitt's arguments necessarily fail.

Accordingly, in the event the Southern District of New York grants the stay, this Court then should deny Reckitt's Motion and permit this case to proceed. Only if the New York court denies the stay should this Court grant Reckitt's Motion. In any event, this Court should defer any ruling on the Motion pending the outcome of Gillette's stay motion in New York.

### II. THE DISTRICT OF MASSACHUSETTS IS THE APPROPRIATE AND CONVENIENT FORUM FOR RESOLUTION OF THIS DISPUTE.

To the extent Reckitt offers an independent argument for transfer to New York based on the alleged inconvenience of this venue and the alleged convenience of the Southern District,

-6-

such argument is readily answered. Neither of the parties to these parallel actions is based in New York, let alone the Southern District of New York. Rather, Gillette is headquartered in Massachusetts, and Reckitt is headquartered in *New Jersey*. The District of Massachusetts is the more convenient forum from the standpoint of Gillette's employee witnesses, while New Jersey (not New York) presumably would be the more convenient forum from the standpoint of Reckitt's employee witnesses.[1] In any event, the convenience of parties analysis certainly does not favor the Southern District.

In its Motion, Reckitt cites the alleged inconvenience of the District of Massachusetts to certain non-party witnesses – namely, employees of Reckitt's advertising agency, public relations firm, and market research firm – whom Reckitt expects to testify and who are located in New York City. *See* Motion at 9-10. These witnesses, however, are likely to be readily available to Reckitt, since Reckitt is a client of their respective firms. In any event, non-party witnesses can be deposed if unavailable for trial, and thus this factor does not carry much weight. *See Trans National Travel, Inc. v. Sun Pacific Intern. Inc.*, 10 F.Supp.2d 79, 81 (D. Mass. 1998) (holding that "the defendant has failed to establish that this case should be transferred to Arizona for the convenience of the witnesses" because "any non-party witness who is not subject to compulsory process . . . may be compelled to appear for pretrial discovery in a proper location").

In addition, Massachusetts, as the home venue of Gillette, the real aggrieved party in this dispute, has a strong interest in the matter, especially as compared to New York, which has no particular interest in Reckitt, a New Jersey corporation. *See Veryfine Prods., Inc. v. Phlo Corp.*, 124 F.Supp.2d 16, 26 (comparing Massachusetts' interest in protecting the rights of

---

[1] Gillette intends to call its own employees as witnesses on a number of fact issues, not the least of which is the past and future economic harm to Gillette caused by Reckitt's false and misleading advertising of its products.

-7-

Massachusetts corporations with New York's interest in protecting the rights of an out of state corporation). Moreover, Gillette has pleaded a claim under Massachusetts law, which Massachusetts has a clear interest in enforcing. *See Symbol Technologies, Inc. v. Quantum Associates, Inc.*, No. CIV. A. 01-10983-GAO, 2002 WL 225934 at *2 (D. Mass. Jan. 30, 2002) (holding that transfer of case to California was justified because California law applied and California courts were in a better position to apply and enforce California law). By contrast, New York, in which neither party is located, has no special interest in the proceeding.

In sum, even if the relative convenience of the two venues is considered, the District of Massachusetts is the more convenient forum on balance.

## Conclusion

This Court should defer any ruling on the Motion pending the outcome of Gillette's stay motion in New York. If Gillette's motion is granted, this Court then should deny the Motion and permit this case to proceed.

The Gillette Company

By its attorneys,

*[signatures: William L. Patton; Levina Wong]*

---
William L. Patton (BBO No. 391640)
Levina Wong (BBO No. 54510)
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
(617) 951-7000

Of counsel:
James M. Spears
Peter M. Brody
David M. Menichetti
ROPES & GRAY LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC 20005-3948
(202) 508-4600

*Attorneys for Plaintiff*

Dated: June 24, 2004

**CERTIFICATE OF SERVICE**
I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party ~~by mail~~/by hand
Date: June 24, 2004  *[signature: Levina Wong]*